In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 17-1773, 17-1860, 17-1866, 17-2622, 17-2756 & 18-1374

KATHERINE EVANS,

*Plaintiff-Appellee,*

*v.*

PORTFOLIO RECOVERY ASSOCIATES, LLC,

*Defendant-Appellant.*

and

LUSVINA PAZ,

*Plaintiff-Appellee,*

*v.*

PORTFOLIO RECOVERY ASSOCIATES, LLC,

*Defendant-Appellant.*

and

PETER BOWSE,

*Plaintiff-Appellee,*

*v.*

PORTFOLIO RECOVERY ASSOCIATES, LLC,

*Defendant-Appellant.*

and

EVELYN GOMEZ,

*Plaintiff-Appellee,*

*v.*

PORTFOLIO RECOVERY ASSOCIATES, LLC,

*Defendant-Appellant.*

————————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division
No. 15-cv-4498 — **Matthew F. Kennelly**, *Judge,*
No. 15-cv-5073 — **Manish S. Shah**, *Judge,*
No. 15-cv-4037 — **Jorge L. Alonso**, *Judge,* and
No. 15-cv-4499 — **Samuel Der-Yeghiayan**, *Judge.*

————————————

ARGUED APRIL 18, 2018 — DECIDED MAY 2, 2018

————————————

Before WOOD, *Chief Judge,* and FLAUM and EASTERBROOK, *Circuit Judges.*

FLAUM, *Circuit Judge.* This appeal concerns four consolidated cases involving similar alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(8). Plaintiffs defaulted on credit cards, and defendant Portfolio Recovery Associates ("PRA"), an Illinois debt collection agency, bought the accounts for collection. The Debtors Legal Clinic (the "Clinic") sent separate letters on behalf of each plaintiff to PRA, stating "the amount reported is not accurate." PRA later reported each debt to credit reporting agencies without noting that the debt was "disputed." Plaintiffs each filed a suit against PRA for violations of the FDCPA,

alleging that PRA communicated their debts to credit reporting agencies without indicating they had disputed the debt. The district courts granted summary judgment in favor of plaintiffs. We affirm.

## I. Background

### A. Factual Background[1]

Each plaintiff defaulted on their credit card account, and PRA purchased the debts from the original creditors. As required by 15 U.S.C. § 1692g, PRA sent plaintiffs validation letters detailing the debt.[2] Each plaintiff then sought the advice of the Clinic, a non-profit legal aid organization. More than thirty days after PRA sent the validation letters, Andrew Finko, a volunteer attorney at the Clinic, faxed separate letters to PRA on behalf of each plaintiff (hereinafter, the "Letters"). The Letters stated:

> This letter is concerning the above referenced debt.

---

[1] The following facts apply to all plaintiffs. For specific details relating to each plaintiff, we refer the reader to the district court's individual summary judgment rulings. *See Paz v. Portfolio Recovery Assocs., LLC*, No. 15-cv-5073, 2016 WL 6833932 (N.D. Ill. Nov. 21, 2016); *Evans v. Portfolio Recovery Assocs., LLC*, No. 15-cv-4498, 2016 WL 6833930 (N.D. Ill. Nov. 20, 2016); *Bowse v. Portfolio Recovery Assocs., LLC*, 218 F. Supp. 3d 745 (N.D. Ill. 2016); *Gomez v. Portfolio Recovery Assocs., LLC*, No. 15-cv-4499, 2016 WL 3387158 (N.D. Ill. June 20, 2016).

[2] The letters included: (1) "the amount of the debt"; (2) "the name of the creditor to whom the debt is owed"; (3) a statement that the amount of debt will be assumed valid unless disputed within thirty days; (4) a statement that if the debt is disputed, the debt collector will obtain verification of the debt; and (5) a statement that the debt collector will provide the name and address of the original creditor if requested. See 15 U.S.C. § 1692g(a). No plaintiff disputed the debt within thirty days.

Debtors Legal Clinic is a non-profit legal services organization that advises senior citizens, veterans, and low-income individuals whose income is protected by law of their rights under various state and federal statutes. Our clinic represents the above referenced client for the purposes of enforcing their rights pursuant to all applicable debt collection laws.

This client regrets not being able to pay, however, at this time they are insolvent, as their monthly expenses exceed the amount of income they receive, and the amount reported is not accurate. If their circumstances should change, we will be in touch.

Our office represents this client with respect to any and all debts you seek to collect, now or in the future, until notified otherwise by our office. As legal representative for this client, all communication must be through our office, please do not contact them directly.[3]

If you wish to discuss this matter, please contact our office directly at [phone number] to speak with the attorney assigned to the matter, Andrew Finko.

Subsequent to receiving the Letters, PRA reported the amount of the debt, the account number, and the original creditor to credit reporting agencies. However, PRA did not inform the credit reporting agencies that the debt was disputed.

---

[3] This paragraph was not included in the letters sent to plaintiffs Evans and Gomez. Instead, at the end of the last paragraph, those letters included the sentence: "As legal representatives for this client, all future communication regarding this debt must be communicated through our office."

PRA admits it received and reviewed the Letters. It says it treated them as "attorney representation letters," but did not believe the Letters communicated disputes. According to Nyetta Jackson, PRA's Vice President of Operations:

> There was nothing [in the Letters] that indicated that this was a clear dispute that needed to be processed. What was clear is that the attorney was letting us know that they now represent the customer. What was clear is that they said they didn't have the money to pay and they regretted that.

To support this view, Jackson states that Finko did not fax the Letters to PRA's special disputes department; rather, he sent the Letters to PRA's general counsel. Additionally, Jackson notes that on prior occasions, Finko sent letters that expressly stated his client "disputes the debt."

## B. Procedural Background

The plaintiffs alleged that PRA violated 15 U.S.C. § 1692e(8), which prohibits debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Plaintiffs maintained that they "disputed" the debt when the Clinic sent the Letters to PRA, and PRA admits that it did not inform the credit reporting agencies that the debt was disputed. The parties filed cross-motions for

summary judgment, and the district courts each granted summary judgment for plaintiffs. We consolidated PRA's appeals for argument and disposition.[4]

## II. Discussion

"We review de novo a district court's decision on cross-motions for summary judgment, construing all facts and drawing all reasonable inferences in favor of the party against whom the motion under consideration was filed." *Hess v. Bd. Of Trs. Of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016). "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(a)).

PRA makes four arguments: (1) plaintiffs did not have Article III standing; (2) the Letters did not "dispute" the debt within the meaning of § 1692e(8); (3) even if PRA violated the statute, the violation was not material; and (4) PRA has a bona fide error defense under § 1692k(c). We address each in turn.

### A. Standing

First, PRA argues that plaintiffs lacked Article III standing. To establish standing, a plaintiff must show:

---

[4] Other debtors (also represented by the Clinic) filed identical claims in seven cases not part of this consolidated appeal. In four of those cases, the parties settled. In two cases, the district courts granted summary judgment in favor of the plaintiff after this appeal was filed. *See Baranowski v. Portfolio Recovery Assocs.*, No. 157-cv-2939, 2018 WL 1534967 (N.D. Ill. Mar. 29, 2018); *Flores v. Portfolio Recovery Assocs.*, No. 15-cv-2443, 2017 WL 5891032 (N.D. Ill. Nov. 29, 2017). In the other case, the district court struck the parties' summary judgment motions with leave to refile after we issue our decision in this appeal. *Acosta v. Portfolio Recovery Assocs.*, No.15-cv-2441 (N.D. Ill. Aug. 17, 2017).

(1) an "injury in fact," that is, "an invasion of a legally protected interest which is … concrete and particularized, and … actual or imminent"; (2) a causal connection between the injury and the challenged conduct, meaning that the injury is "fairly traceable" to the challenged conduct; and (3) a likelihood "that the injury will be redressed by a favorable decision."

*Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 688 (7th Cir. 2015) (alterations in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Relying primarily on the Supreme Court's recent opinion in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), PRA argues plaintiffs do not have standing because they "did nothing to show that they had an injury in fact." We disagree.

In *Spokeo*, the defendant generated a consumer report that inaccurately stated the plaintiff's address, marital status, age, occupation, finances, and education. *Id.* at 1546. The plaintiff filed a class action, alleging the defendant failed to comply with the Fair Credit Reporting Act ("FCRA"); however, he did not identify any monetary harm. *Id.* Although the Court took no position as to whether the plaintiff actually had standing, *id.* at 1550, it expounded on whether violation of a congressional statute necessarily satisfies the "injury in fact" element. On the one hand, the Court stressed that a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation" because "[a] violation of one of the FCRA's procedural requirements may result in no harm."[5] *Id.* Indeed,

---

[5] As an example, the Court reasoned that "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Spokeo*, 136 S. Ct. at 1550.

the Court stated that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation … is insufficient to create Article III standing.").

On the other hand, however, the Court made clear that "'[c]oncrete' is not … necessarily synonymous with 'tangible.'" *Spokeo*, 136 S. Ct. at 1549. The Court affirmed that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment)). It emphasized that Congress's judgment is "instructive and important" because Congress "is well positioned to identify intangible harms that meet minimum Article III requirements." *Id.* Therefore, the Court concluded that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," such as where the statutory violation creates "risk of real harm." *Id.* "In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.*

Here, PRA's alleged violation of § 1692e(8) is sufficient to show an injury-in-fact. Because PRA failed to report to a credit reporting agency that the debt is disputed, the plaintiffs suffered "a real risk of financial harm caused by an inaccurate credit rating." *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017); *see also Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 146–47 (4th Cir. 2008) ("[The defendant's] decision to report the debt but not the dispute resulted in a much lower credit score for [the plaintiff] than a report of both

the debt and the dispute."). An inaccurate credit report produces a variety of negative effects. For instance, it is "a red flag to the debtor's other creditors and anyone who runs a background or credit check, including landlords and employers." *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1082 (7th Cir. 2013) (quoting *Tyler v. DH Capital Mgmt.*, 736 F.3d 455, 464 (6th Cir. 2013)).

PRA claims that two post-*Spokeo* Seventh Circuit opinions preclude a finding of standing. First, PRA points to *Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016). *Meyers* involved the Fair and Accurate Credit Transactions Act, which mandates that businesses cannot "print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder." 15 U.S.C. § 1681c(g)(1). A plaintiff brought a class action seeking only statutory damages after he received a receipt that included the expiration date of his credit card. *Meyers*, 843 F.3d at 725. Citing *Spokeo*, we dismissed the plaintiff's claim for lack of standing. *Id.* at 727. We concluded that the plaintiff "did not suffer any harm because of [the defendant's] printing of the expiration date on his receipt" and that the violation did not create "any appreciable risk of harm." *Id.* Specifically, we stressed that the plaintiff "discovered the violation immediately and nobody else ever saw the non-compliant receipt." *Id.*

The supposed harm in *Meyers* is distinct from the harm in this case; PRA's action *does* create an "appreciable risk of harm." In *Meyers*, "it [was] hard to imagine how the expiration date's presence could have increased the risk that [the plaintiff's] identity would be compromised." *Id.* In contrast,

for the reasons discussed above, it is very easy to envision harm to the plaintiffs here.

Second, PRA cites *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017). The statute at issue in *Gubala* was the Cable Communication Policy Act, which provides that cable operators "shall destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected." 47 U.S.C. § 551(e). The plaintiff subscribed to the defendant's cable service and provided the defendant his date of birth, home address, phone numbers, social security number, and credit card information. *Gubala*, 846 F.3d at 910. Eight years after cancelling his subscription, the plaintiff discovered that the defendant still possessed his personal information and filed a class action. *Id.* Despite acknowledging that the defendant violated § 551(e), we held the plaintiff lacked standing because "[h]is only allegation [was] that the retention of the information, on its own, ha[d] somehow violated a privacy right or entailed a financial loss." *Id.*

Critically, however, we stressed that "[t]here [was] unquestionably a *risk of* harm." *Id.* Indeed, we acknowledged that the plaintiff "may have feared that … his personal information might have been stolen from [the defendant] or sold or given away by it, and if so the recipient or recipients of the information might be using it, or planning to use it, in a way that would harm him." *Id.* But such possibilities could not support standing because, "[a]lthough it [was] plausible that he feared this, he never told [the Court] that this is what he was worried about." *Id.*; *see also id.* at 913 ("Maybe what he's trying to say is that he fears that [the defendant] will give away the information and it will be used to harm him …. But

he hasn't said *any* of that."). In contrast, plaintiffs here explicitly alleged a risk of concrete harm—they pointed to the risk of financial harm as result of credit reporting agencies lowering their credit score. As such, they have Article III standing.

## B. Communication of a Disputed Debt

Turning to § 1692e(8) itself, PRA argues it committed no violation because the Letters "do not qualify as raising any type of true dispute, but are a sham, designed to create liability where no harm to a consumer is threatened." It maintains that § 1692e(8) "should be given a reasonable interpretation as only applying to true disputes that can be understood as such and meaningfully investigated and addressed." PRA's argument is contrary to the language of § 1692e(8).

The FDCPA makes clear that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Specifically, the statute lists as illicit: "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, *including the failure to communicate that a disputed debt is disputed*." *Id.* § 1692e(8) (emphasis added).

Plaintiffs each sent a Letter to PRA which stated "the amount reported is not accurate." Despite receiving the Letters, PRA still reported plaintiffs' debts to credit reporting agencies without noting that the debt amounts were disputed. This is a clear violation of the statute.

True, § 1692e(8) does not define "dispute" or provide a procedure for consumers to follow to dispute their debt. But the ordinary meaning of "dispute" is clear. *See Dispute*, Mer-

riam-Webster Dictionary, http://www.merriam-web-ster.com/dictionary/dispute (last visited April 23, 2018) (defining "dispute" as "to call into question or cast doubt upon"). When plaintiffs said "the amount reported is not accurate," they "call[ed] into question" the amount PRA claimed they owed—in other words, they *disputed* the debt. There is simply no other way to interpret this language. Each of the district courts below arrived at the same conclusion. *See Paz v. Portfolio Recovery Assocs., LLC*, No. 15-cv-5073, 2016 WL 6833932, at *4 (N.D. Ill. Nov. 21, 2016); *Evans v. Portfolio Recovery Assocs., LLC*, No. 15-cv-4498, 2016 WL 6833930, at *2 (N.D. Ill. Nov. 20, 2016); *Bowse v. Portfolio Recovery Assocs., LLC*, 218 F. Supp. 3d 745, 751 (N.D. Ill. 2016); *Gomez v. Portfolio Recovery Assocs., LLC*, No. 15-cv-4499, 2016 WL 3387158, at *3 (N.D. Ill. June 20, 2016). So too did two additional courts, addressing the meaning of the same statement. *Baranowski v. Portfolio Recovery Assocs., LLC*, No. 15-cv-2939, 2018 WL 1534967, at *3 (N.D. Ill. Mar. 29, 2018); *Flores v. Portfolio Recovery Assocs., LLC*, No. 15-cv-2443, 2017 WL 5891032, at *3 (N.D. Ill. Nov. 29, 2017).

PRA maintains the Letters did not introduce a dispute because "there was nothing 'false, deceptive or misleading' about what PRA did." It claims that "[t]he record shows that these plaintiffs owed the debts and the amounts stated were accurate." This argument fails because "our task is to interpret the words of Congress, not add to them." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). Section 1692e(8) does not require an individual's dispute be valid or even reasonable. Instead, the plaintiff must simply make clear that he or she disputes the debt. *See DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010) ("[A] consumer can dispute a debt for 'no reason at all ....'"). Indeed, "[g]iven the FDCPA's 'comprehensive and

reticulated statutory scheme, involving clear definitions, precise requirements, and particularized remedies,' the absence of an explicit pre-suit validation requirement is telling." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 392 (4th Cir. 2014) (quoting *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 233 (4th Cir. 2007)). We decline PRA's invitation to read into § 1692e(8) a requirement that is not in the text.

Additionally, PRA argues the phrase "the amount reported is not accurate" is somehow ambiguous. It is mistaken. Section 1692e(8) does not require that the Letter use the word "dispute." Indeed, the "knows or should know" standard of § 1692e(8) "requires no notification by the consumer … and instead, depends solely on the debt collector's knowledge that a debt is disputed, regardless of how that knowledge is acquired." *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998).[6] Thus, it makes no difference that Finko used the word "dispute" when sending prior letters. Likewise, it is irrelevant that the Clinic sent the Letters to PRA's general counsel rather than the special disputes department.[7]

Finally, PRA and amicus curiae, the Association of Credit and Collection Professionals ("ACA International" or "ACA"), point to other provisions where Congress supposedly gave

---

[6] In fact, the debtor need not even put the dispute in writing to comply with § 1692e(8). *See Sayles*, 865 F.3d at 249–50; *Brady*, 160 F.3d at 66–67.

[7] PRA's observation that "the amount reported is not accurate" is "tuck[ed] … into [the] representation letters" is worth noting. It is curious that this phrase is placed between the statements: "This client regrets not being able to pay"; and "If their circumstances should change, we will be in touch." In any event, PRA must follow § 1692e(8)'s clear directive.

"disputed" a "specific meaning." First, § 1692g(b), entitled "Disputed debts," provides, in relevant part:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, … the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, … and a copy of such verification or judgment, … is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b).

PRA and ACA argue that the phrase "disputed debt" in § 1692e(8) must be interpreted in light of § 1692g(b). They are incorrect. To the extent that § 1692g(b) defines "disputed," that definition applies only to the requirements of that provision and does not extend to § 1692e(8). *See Sayles*, 865 F.3d at 250 ("[§1692g(b)'s] debt dispute and verification requirements do not carry over to [§ 1692e(8)] …."); *Russell*, 763 F.3d at 392 ("Nothing in the text of the FDCPA suggests that a debtor's ability to state a claim under § 1692e is dependent upon the debtor first disputing the validity of the debt in accordance with § 1692g."); *Brady*, 160 F.3d at 66 ("Viewing the language of § 1692e(8) in the context of other provisions of the FDCPA, it makes logical sense to conclude that the meaning of 'disputed debt' in § 1692g(b) does not carry over to § 1692e(8)."); *see also Hooks v. Forman, Holt, Eliades & Ravin*, 717 F.3d 282, 286 (2d Cir. 2013); *Purnell v. Arrow Fin. Servs., LLC*, 303 F. App'x 297, 304 (6th Cir. 2008).

This distinction makes sense. Section 1692g(b) "confers on consumers the ultimate power vis-à-vis debt collectors: the power to demand the cessation of all collection activities." *Brady*, 160 F.3d at 67. In contrast, "§ 1692e(8) does not affect debt collection practices at all," but instead "merely requires a debt collector who knows or should know that a given debt is disputed to disclose its disputed status to persons inquiring about a consumer's credit history." *Id.* "Given the much more limited effect of [§ 1692e(8)]," plaintiffs need not adhere to as many requirements to raise a dispute. *Id*; *see also Hooks*, 717 F.3d at 286 ("[T]he rights defined by … [§] 1692e(8) place less of a burden on debt collectors than the rights defined by § 1692g…(b).").

Moreover, this conclusion is consistent with the language of § 1692e(8):

> If the meaning of "disputed debt" as used in § 1692g(b) carried over to § 1692e(8), then, in order to trigger the limited protection of § 1692e(8), a consumer would be required to submit written notice to a debt collector within the initial thirty-day period. But the plain language of § 1692e(8) requires debt collectors to communicate the disputed status of a debt if the debt collector "knows or should know" that the debt is disputed.… Applying the meaning of "disputed debt" as used in § 1692g(b) to § 1692e(8) would thus render the provision's "knows or should know" language impermissibly superfluous.

*Brady*, 160 F.3d at 67 (citations omitted); *see also Sayles*, 865 F.3d at 249–50 (same). In short, "had Congress intended for a debt collector's liability under the FDCPA to hinge upon a debtor's compliance with the validation provisions found in § 1692g,

… it would have so indicated with conspicuous language to that effect." *Russell*, 763 F.3d at 392.

Second, PRA and ACA point to § 1681s-2 of the FCRA, which imposes a similar requirement as § 1692e(8):

> If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

15 U.S.C. § 1681s-2(a)(3). However, unlike § 1692e(8), § 1681s-2 describes the procedure that one must follow to submit a dispute. The consumer must "(i) identif[y] the specific information that is being disputed; (ii) explain[] the basis for the dispute; and (iii) include[] all supporting documentation required by the furnisher to substantiate the basis of the dispute." *Id.* § 1681s-2(a)(8)(D). Moreover, § 1681s-2 "shall not apply if the person receiving a notice of a dispute from a consumer reasonably determines that the dispute is frivolous or irrelevant." 15 U.SC. § 1681s-2(a)(8)(F).

PRA and ACA's reliance on §1681s-2 is not persuasive for the same reasons we may not rely on § 1692g(b): It is a different provision with different requirements. The FDCPA does not incorporate § 1681s-2 or say that its requirements apply to § 1692e(8).[8]

---

[8] In contrast, other FDCPA provisions expressly refer to the FCRA. *See, e.g.*, 15 U.S.C. § 1692d(3).

### C. Materiality

PRA next contends that even if it technically violated § 1692e(8), that violation was "immaterial, and therefore, not actionable" because its "reporting to the credit bureaus without a note of 'disputed' had zero influence upon plaintiffs." Generally, § 1692e only protects against false statements that are material—in other words, statements that would "influence a consumer's decision … to pay a debt." *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009). "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645–46 (7th Cir. 2009). Put another way, "[f]or purposes of § 1692e, … a statement isn't 'false' unless it would confuse the unsophisticated consumer." *Id.* at 646.

Critically, however, the Seventh Circuit cases applying the materiality requirement to § 1692e all involve allegedly misleading communications made to *consumers*. In contrast, the present case involves an allegedly misleading communication made to *credit reporting agencies*. While we have not reached this precise question, the Eighth Circuit has persuasively reasoned that § 1692e(8)'s command that debtors must "communicate that a disputed debt is disputed" is "rooted in the basic fraud law principle that, if a debt collector *elects* to communicate 'credit information' about a consumer, it must not omit a piece of information that is *always material*, namely, that the consumer has disputed a particular debt." *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008) (second emphasis added). We agree with the Eighth Circuit. As the district court in *Gomez* explained:

> Whether or not a consumer is disputing a debt is no minor matter that could be deemed an immaterial aspect of the debt. Such a false and misleading statment [sic] would likely influence a consumer's decision to pay a debt … [and] could have had far reaching consequences for [plaintiff] in her daily life.

2016 WL 3387158, at *4; *see also Paz*, 2016 WL 6833932, at *5. Put simply, the failure to inform a credit reporting agency that the debtor disputed his or her debt will *always* have influence on the debtor, as this information will be used to determine the debtor's credit score.

### D.  Bona Fide Error Defense

Finally, PRA argues the bona fide error defense protects it from liability because it did not "inten[d] to violate the FDCPA or to ignore a dispute" and did not understand the Letters as stating "a dispute on the debt balance." It states that its "good faith" mistake is "precisely the definition of bona fide." PRA is incorrect.

> Under the FDCPA,

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). In order to claim this defense, the burden is on the defendant to show (1) "that the presumed FDCPA violation was not intentional"; (2) "that the presumed FDCPA violation resulted from a bona fide error"; and (3) "that it maintained procedures reasonably adapted to avoid any such

error." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005). Importantly, a defendant can invoke the bona fide error defense only if it claims it made an error of *fact*, not an error of *law*. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604–05 (2010). Thus, "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute." *Id.*

Here, PRA incorrectly believed the statement "the amount reported is not accurate" did not constitute a "dispute" under § 1692e(8). In other words, it "incorrect[ly] interpret[ed] … the requirements of [the FDCPA]." *See id.* This is a mistake of law. By contrast, a mistake of fact would have occurred if, for example, PRA lost the Letters before opening them or did not actually read the language disputing the debt. But PRA concedes that it received and read the Letters, including the relevant phrase. Therefore, the district courts were correct that the bona fide error defense is not available.[9]

---

[9] Moreover, even if we assume that PRA made an unintentional error of fact, it still is not entitled to the bona fide error defense because it did not maintain procedures reasonably adapted to avoid the error. In this context, "procedures" are "processes that have mechanical or other such 'regular orderly' steps to avoid mistakes." *Jerman*, 559 U.S. at 587. A "thinly specified 'policy,' allegedly barring some action but saying nothing about what action to take, is [not] an adequate 'procedure' under § 1692k(c)." *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 900 (7th Cir. 2015). While the evidence demonstrates that PRA provided training sessions and a manual to employees about recognizing and processing disputes, "[t]here is no evidence that PRA has measures in place to prevent careless misreading of letters, such as having employees periodically check one another's work, for example." *Flores*, 2017 WL 5891032, at *6.

## III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district courts.[10]

---

[10] Contrary to appellees' request, we need not remand to the district court to determine an award of attorney fees and costs incurred on this appeal. *See Divane v. Krull Elec. Co.*, 319 F.3d 307, 322 (7th Cir. 2003). Instead, appellees should follow the commands of Federal Rule of Appellate Procedure 39. *See* Fed. R. App. P. 39(d)(1) ("A party who wants costs taxed must—within 14 days after entry of judgment—file with the circuit clerk, with proof of service, an itemized and verified bill of costs.").